UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

SAMUEL SMITH,

    Plaintiff,

v.                                      CASE No. 8:10-CV-669-T-TGW

MICHAEL J. ASTRUE,
Commissioner of Social Security,

    Defendant.
_____

## ORDER

The plaintiff in this case seeks judicial review of the denial of his claims for Social Security disability benefits and supplemental security income payments.* Because the decision of the Commissioner of Social Security that the plaintiff could perform light work throughout the five-year period at issue is fundamentally flawed, the decision will be reversed and the matter remanded for further proceedings.

_____

*The parties have consented in this case to the exercise of jurisdiction by a United States Magistrate Judge (Doc. 15).

I.

The plaintiff, who was fifty years old at the time of the administrative hearing, and who has a ninth grade education (Tr. 8), has worked as a water softener installer, rod buster, and carpenter (Tr. 9, 13, 209). He filed claims for Social Security disability benefits and supplemental security income payments, alleging that he became disabled due to back pain, leg pain, entire lumbar failure, and chronic internal bleeding (Tr. 159). The claims were denied initially and upon reconsideration.

The plaintiff, at his request, then received a de novo hearing before an administrative law judge. The law judge found the plaintiff has severe impairments of "[h]istory of spondylosis and degenerative disc disease (DDD) of the lumbar and cervical spine, and chronic obstructive pulmonary disease (COPD) with small nodules of the right lung" (Tr. 70). The law judge concluded that these impairments limited the plaintiff to light work that does not involve concentrated exposure to environmental pollutants, such as "pulmonary irritants, extreme heat and cold, wetness, humidity, fumes, odors, dusts, gases, poor ventilation and unprotected heights" (Tr. 71). Further, the law judge restricted the plaintiff to occasional stooping and climbing of

ladders, ropes, and scaffolds (id.). The law judge determined that these limitations prevented the plaintiff from performing past work (Tr. 76). However, based upon the testimony of a vocational expert, the law judge ruled that there were jobs in the national economy that the plaintiff could perform, such as electrical assembler, hand packer/packager, and office helper (Tr. 77). The Appeals Council let the decision of the law judge stand as the final decision of the Commissioner.

II.

A. In order to be entitled to Social Security disability benefits and supplemental security income, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which ... has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment," under the terms of the Act, is one "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. 423(d)(3), 1382c(a)(3)(D). In this case, the plaintiff must show that he became disabled

before his insured status expired on March 31, 2007, in order to receive disability benefits. 42 U.S.C. 423(c)(1); Demandre v. Califano, 591 F.2d 1088, 1090 (5th Cir. 1979), cert. denied, 444 U.S. 952. There is not a similar requirement with respect to the plaintiff's claim for supplemental security income payments.

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence. 42 U.S.C. 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971), quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938). Under the substantial evidence test, "findings of fact made by administrative agencies ... may be reversed ... only when the record compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings." Adefemi v. Ashcroft, 386 F.3d 1022, 1027 (11th Cir. 2004) (en banc), cert. denied, 544 U.S. 1035 (2005).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the

witnesses. Grant v. Richardson, 445 F.2d 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. Celebrezze v. O'Brient, 323 F.2d 989, 990 (5th Cir. 1963).

Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to reweigh the evidence, but is limited to determining whether the record as a whole contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. However, the court, in its review, must satisfy itself that the proper legal standards were applied and legal requirements were met. Lamb v. Bowen, 847 F.2d 698, 701 (11th Cir. 1988).

B. The Commissioner's regulations set out what is termed a "sequential" analysis for deciding disability claims. See 20 C.F.R. 404.1520, 416.920. One of the threshold inquiries (step two) is whether a claimant has a severe impairment. 20 C.F.R. 404.1520(c), 416.920(c). An impairment is not severe if it does not significantly limit a claimant's physical or mental abilities to do basic work activities. 20 C.F.R. 404.1521(a), 416.921(a). If

a claimant's impairments are not severe, then a claimant is deemed to be not disabled. 20 C.F.R. 404.1520(c), 416.920(c).

When an impairment is severe, but does not meet, or equal, a listing in Appendix 1 (step three), a further inquiry (step four) is made as to whether the impairment prevents the claimant from doing past relevant work. 20 C.F.R. 404.1520(f), 416.920(f). If a claimant cannot do such work, an additional determination (step five) is made concerning whether the claimant can perform other work which exists in significant numbers in the national economy. 20 C.F.R. 404.1520(g), 416.920(g). In such cases, the regulations direct that an individual's residual functional capacity, age, education, and work experience be considered in determining whether the claimant is disabled. These factors are codified in tables of rules, known as "guidelines" or "grids," that are appended to the regulations. 20 C.F.R. Part 404, Subpart P, Appendix 2.

### III.

The plaintiff challenges the law judge's decision on two grounds. Specifically, the plaintiff contends that the law judge erred in rejecting opinions from treating physicians, most notably Dr. George S. Sidhom, a pain

management specialist, and in concluding that the plaintiff can perform light work.

At the hearing, the plaintiff testified that he experiences severe pain in his legs, lower back, middle back, and neck (Tr. 15-16). The plaintiff claims that his wife, who is disabled, does "the cooking [and] the cleaning for the most part," but that he shaves, showers, makes coffee, and feeds his cat (Tr. 21, 22). The plaintiff also said that he sits for most of the day and, somewhat inconsistently, that he is "hardly ever out [of bed]" (Tr. 18, 21). He stated further that he requires a cane to ambulate and to stand because his right leg goes numb, causing him to fall (Tr. 18). The plaintiff testified that he can walk for twenty to thirty minutes at a time and stand for twenty to thirty minutes using a cane (Tr. 17, 18). He indicated, moreover, that his condition has progressively worsened (Tr. 16, 19).

The plaintiff filed his current applications in April 2007 (Tr. 68). He had previously filed unsuccessful applications in 2004 and 2005, but they never reached the hearing stage (Tr. 28, 528). The law judge declined the plaintiff's request to reopen those denials, but said he would adjudicate the 2007 applications from the alleged onset date of April 1, 2004 (Tr. 28).

The law judge, as a result, considered a five-year period from the alleged onset date of April 1, 2004, to the date of decision on September 29, 2009 (Tr. 70). The law judge appears to have viewed the plaintiff's condition as remaining constant throughout this period. A review of the record indicates otherwise.

In October 2004, the plaintiff complained to an examining doctor about pain "mainly localized to the lumbosacral spine region" (Tr. 292). By January 2009, he was also complaining of pain of increasing severity in the right side of the neck with radiation into the right arm and right shoulder blade (Tr. 471), as well as pulmonary problems. As a result of the back and neck impairments, the plaintiff on February 4, 2009, began a series of nerve block procedures (Tr. 459). The medical necessity for the nerve block procedures was explained as follows (Tr. 460):

> The patient suffers from chronic disabling pain which has caused psychological, social, and physical impairment. The patient has been tried unsuccessfully on multiple conservative methods of treatment to relieve this pain. These conservative methods have included medication management physical therapy and others. It is presently a medical necessity that the patient undergo interventional nerve block therapy to

> alleviate the painful syndrome and to allow the patient to return to a more functional quality of life.
>
> Radiological findings are consistent with the preop diagnosis supporting it and the treatment of nerve block therapy. Multiple attempts at alleviating the painful condition with less invasive treatments have been tried and have been unsuccessful and thus necessitating this procedure.

The most telling aspect of the law judge's failure to acknowledge the plaintiff's deteriorating condition is shown by the law judge's determination to give weight to the November 1, 2004, opinion of a nonexamining reviewing physician (Tr. 75; see Tr. 298-305). That opinion was based on a consultative examination of October 20, 2004 (Tr. 292). The examining doctor stated, among other things, that the plaintiff's gait is normal and that he is ambulatory without any assistive device (Tr. 293).

In contrast, the plaintiff was seen for another consultative examination on June 27, 2007. That examining doctor reported that the plaintiff walks with a cane and that he "can walk without the cane for 10 feet with an antalgic gait" (Tr. 324). This finding obviously shows a significant change in the plaintiff's ability to walk.

The law judge, under these circumstances, should not have given any meaningful weight to the 2004 opinion of the nonexamining reviewer. The 2004 opinion was a factor in the denial of the 2004 application, which was not reopened. It does not shed any significant light on the plaintiff's condition during 2007-09. That is particularly so in light of the plaintiff's deteriorating condition and his subsequent use of a cane.

The law judge also said that he gave great weight to the opinions and findings of the treating doctors at Suncoast Community Health Center (Tr. 74). After reviewing those records (Tr. 334-36, 423-27), I have no idea what opinions and findings the law judge had in mind. For the most part, the plaintiff went to the Suncoast Community Health Center simply to get a referral to see Dr. Sidhom, his pain management specialist. There is nothing in those records that provides any solid support for the finding that as of September 29, 2009, the plaintiff could perform that aspect of light work which requires the ability to stand or walk for six hours of an eight-hour workday and to lift twenty pounds.

In determining that the plaintiff could perform light work, the law judge also considered that "the claimant's attorney conceded in his initial

-10-

Memorandum that the claimant is capable of light work" (Tr. 73). I saw no such concession. Rather, the most that the attorney indicated was that, if the plaintiff could perform sedentary work, under the medical-vocational guidelines he would be considered disabled when he became fifty years of age (Tr. 528-29; see 20 C.F.R. Part 404, Subpart P, App. 2, Rule 201.10).

The law judge's erroneous notion that the plaintiff's attorney had conceded that the plaintiff could perform light work certainly had the propensity to distort the law judge's assessment of whether the plaintiff could carry out such work. Moreover, the law judge's assessment, as previously explained, is flawed in other respects as well. Consequently, the law judge's finding that the plaintiff could perform light work throughout the period from April 1, 2004, to September 29, 2009, is reversed, and the matter remanded for reconsideration. In this respect, it is noted that the plaintiff's contention was simply that the law judge erred in finding that the plaintiff had the residual functional capacity to perform light work (Doc. 16, p. 12).

The plaintiff asserts, in addition, that the law judge failed to accord "controlling weight" to the opinions of treating physicians Dr. Sidhom and Dr. Dragos G. Zanchi that the plaintiff was essentially disabled (id., pp.

5-12). Dr. Sidhom, a specialist in pain management, has treated the plaintiff since January 2000. Dr. Zanchi is a pulmonary specialist who diagnosed, and treated, the plaintiff's COPD in 2008 and 2009.

Both doctors filled out forms apparently provided to them by the plaintiff. Thus, on January 23, 2009, Dr. Sidhom filled out a form entitled "Treating/Examining Source Statement of Physical Capacity" and included, among other things, a limitation in sitting to less than six hours in an eight-hour workday, and a limitation in standing and walking to less than two hours, with unpredictable breaks to lie down (Tr. 414). Dr. Zanchi, on July 1, 2009, opined on a form entitled "Treating/Examining Source Statement - Residual Functional Capacity (Pulmonary)" that the plaintiff, in addition to at least three absences a month, could lift only five pounds occasionally and that he must take more than ten unscheduled breaks during an eight-hour workday due to COPD (Tr. 540).

Opinions from treating physicians are entitled to substantial or considerable weight unless there is good cause for not affording them such weight. Phillips v. Barnhart, 357 F.3d 1232, 1240 (11th Cir. 2004). Good cause exists when the treating physician's opinion is not bolstered by the

-12-

evidence, the evidence supports a contrary finding, or when the opinion is conclusory or inconsistent with the physician's own medical records. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997).

The law judge expressly recognized that he needed to consider the medical opinions (Tr. 72). The law judge, accordingly, considered Dr. Sidhom's and Dr. Zanchi's opinions, and he discounted them (Tr. 73, 74-75).

With respect to Dr. Sidhom, the law judge explained that the opinions "contrast sharply with his own progress notes and objective findings wherein, on several occasions, he noted that claimant's physical and functional performances have been adequately maintained with medical therapy" (Tr. 73). The law judge added (id.):

> In May 2009 claimant was noted to be in no apparent distress. He reported improvements in his symptoms; overall, his functional performance had improved. Nighttime sleep was improved and adjuvant analgesic use was reduced. Treatment consisted of a series of lumbar steroid injections, nerve block therapy, Methadone, Soma and Lorcet ... Additionally, claimant reported improvements in his symptoms and that overall his functional performance had improved. Dr. Sidhom's findings do not support a conclusion that the claimant's impairments were disabling. As a result, his opinions were given little weight.

These reasons are adequate to provide good cause for discounting Dr. Sidhom's opinion. After all, Dr. Sidhom was essentially opining that the plaintiff could not even perform sedentary work. The law judge could reasonably conclude that Dr. Sidhom's notes did not support such a drastic limitation. Thus, Dr. Sidhom regularly reported that the "[p]atient reports adequate analgesia" and that "[w]ith this medical therapy, social and physical functional performance have been adequately maintained" (see, e.g., Tr. 354, 405, 491).

The law judge also reasonably discounted the conclusory form filled out by Dr. Zanchi "because it is not well supported by his own objective findings or other medical evidence of record, which renders it less persuasive" (Tr. 75). The law judge explained that, upon examination, the plaintiff had bilateral airway entry with no rales and was "within normal limits" (Tr. 74). He also discussed the results of a February 2008 PET scan which revealed small nodules and no evidence of activity within the mediastinal lymph nodes (id.). Further, the law judge explained that, despite the nodules, "there is no pulmonary function test or other diagnostic study

showing such significant pulmonary restrictions affecting claimant's ability to work" (Tr. 75).

The plaintiff contends that the law judge made a misstatement when he said "that no pulmonary function test had been performed [because] Plaintiff underwent such procedure on October 27, 2007" (Doc. 16, p. 11). However, the law judge's statement was not inaccurate. The plaintiff failed to acknowledge the portion of the law judge's statement that "there is no pulmonary function test or other diagnostic study **showing any significant pulmonary restrictions**" (Tr. 75)(emphasis added). The pulmonary function test the plaintiff cites in support of this contention indicates that he was not suffering from an acute respiratory illness (Tr. 341) and that the results were "[n]ormal" (Tr. 342).

The law judge also mentioned that doctors at Suncoast Community Health Center in April 2009 "noted that his breathing problems were stable" (Tr. 75). The plaintiff does not point to any contradictory evidence that reveals a disabling pulmonary impairment.

Accordingly, the law judge could reasonably conclude that Dr. Zanchi's opinion regarding the plaintiff's restrictions is patently overstated.

Moreover, the form is conclusory as there is no explanation at all for the restrictions. In all events, the law judge set forth good cause for discounting the opinion.

It is, therefore, upon consideration

ORDERED:

That the Commissioner's decision is hereby REVERSED, and the matter REMANDED for further consideration. The Clerk shall enter judgment in accordance with this Order, and CLOSE this case.

DONE and ORDERED at Tampa, Florida, this 13th day of June, 2011.

_____
THOMAS G. WILSON
UNITED STATES MAGISTRATE JUDGE